IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| RYAN ALEXANDER MAYS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 119-215 |
| | ) | |
| WARDEN EVAN JOSEPH, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff is proceeding *pro se* in this civil rights case filed pursuant to 42 U.S.C. § 1983, which arises out of events occurring in 2019 during Plaintiff's incarceration at Richmond County Correctional Institute ("RCCI"). The Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 62), Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 57), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

**I.     PROCEDURAL BACKGROUND**

In March 2021, the Court granted Defendant's motion to dismiss the only claims that survived screening—the individual capacity claims that Defendant prohibited Plaintiff from growing his hair up to nine inches and growing a goatee in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Doc. nos. 19, 21, 30, 39.) The Court dismissed the RLUIPA claim based on the conclusion Plaintiff could not recover monetary damages against Defendant in his individual capacity. In January 2022, the

Eleventh Circuit affirmed the dismissal of the First Amendment claim but held that, since "Plaintiff requested punitive damages, the district court erred in dismissing his RLUIPA claim against Warden Joseph in his individual capacity on the ground that he could not recover monetary damages." Mays v. Joseph, No. 21-10919, 2022 WL 18981, at *3 (11th Cir. Jan. 3, 2022); (Doc. no. 49.) The Eleventh Circuit remanded the case for a merit determination of the RLUIPA claim.

Presently before the Court are the parties' cross motions for summary judgment. (Doc. nos. 57-60, 62.) The Clerk notified Plaintiff of the Defendant's motion in satisfaction of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*). There are several deficiencies in Plaintiff's summary judgment filings.

First, Plaintiff did not cite record evidence in his statement of undisputed material facts or in his response to Defendant's statement. Accordingly, the Court deems admitted all portions of Defendant's statements having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[1] See Fed. R. Civ. P. 56 (requiring citations to particular parts of materials in the record, and affidavits or declarations used to oppose summary judgment motion made on personal knowledge, set out facts admissible in evidence, and show competency to testify); Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000); Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' statements of material fact admitted where *pro se* prisoner failed to

---

[1] Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

respond with specific citations to evidence and otherwise failed to state valid objection to statement).

Second, Plaintiff's supporting affidavit does not satisfy the requirements of Federal Rule of Civil Procedure 56. Rule 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

Plaintiff's affidavits and other declarations do not respond to each fact in Defendant's statement and also consists of unsworn, conclusory allegations, most of which are inadmissible evidence for purposes of opposing Defendant's motion for summary judgment. See Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (requiring consideration of only admissible evidence when ruling on motions for summary judgment); see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding summary judgment appropriate where inmate produced nothing beyond "his own conclusory allegations" challenging actions of defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."). The Court will regardless consider, where appropriate, Plaintiff's unsworn affidavit and declarations.

However, none of these deficiencies in Plaintiff's filings results in an automatic grant of summary judgment to Defendant. Instead, as the movant, Defendant continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l,

3

Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II.    FACTUAL BACKGROUND

Plaintiff contends Defendant, who was the warden at RCCI during the relevant period of June to October 2019, violated RLUIPA by prohibiting him from styling his beard into a goatee and growing his hair up to nine inches. The applicable GDOC grooming policy prohibited goatees and hair longer than three inches. (Grooming Policy, Def. Ex. B; Doc. no. 6203, pp. 7-8.) Inmates could seek religious exceptions to the grooming policy, pursuant to the applicable GDOC religious accommodations policy, by filing a Special Religious Request as follows:

> The offender shall obtain the Special Religious Request form from their assigned Counselor. The offender shall complete the form in full and submit it to the Counselor, who shall immediately issue the offender a receipt and enter the request into SCRIBE as a case note. The Counselor shall forward the form to the Facility Chaplain. The Facility Chaplain shall maintain a copy of the original request. (For facilities that do not have an available Chaplain, forms shall be forwarded to the Chief Counselor). After review by the Facility Chaplain, the form shall be reviewed by the Warden, Regional Director, Director, Field Operations or Designee, Director of Chaplaincy Services, and General Counsel to ensure consistency, continuity, and constitutional compliance. The Director, Field Operations Designee, Director of Chaplaincy Services and General Counsel/Designee may meet as a panel to review the request and issue a decision. Once a decision is issued, the form shall be returned to the facility and maintained in the offender's institutional file. The review process shall be completed not more than 30 days from the date the counselor receives the original request.

(See Religious Accommodations Policy, Def. Ex. D; Doc. no. 62-6, p. 4.)

Plaintiff's dispute with RCCI began with a disciplinary report dated April 24, 2022, which accused Plaintiff of shaping his beard into a goatee despite prior warnings that a goatee violates the GDOC grooming policy. (Disciplinary Report, Ex. C; Doc. no. 62-5.) On August 27, 2022, Plaintiff filed a special religious request. As entered into the GDOC grievance

4

database, Plaintiff's grievance provides in full as follows:

> "On 8/19/2019 my free exercise clause became more apparent that it is been discriminated against. Since my process on 06/25/2019 my religious rights been challenged and affected by Warden due to acting under color of law. I¿m a Moorish American and I still hold to my indigenous beliefs, my beliefs doesn¿t have to be associated with a traditional or even a establish religion to b ¿religious¿. ¿¿.And belief doesn¿t have to be the same as everyone else¿s in your religion. According to my belief we grow our hair long on our head and facial area due to it mean dignity and manhood. Since the GDC, prison allows to grow facial hair it would not be affected by security or hygiene reasons. However not adhering to the Supreme laws of the land in which the Superintendent/Warden swore to uphold would also be violation not just to the free exercise claims but the establishment clause, the 14th amendment and the religious land and Institutionalized persons act.¿
> RESOLUTION REQUESTED: "I would like to resume to grow my goatee like I done so before transferring here free from retaliation in all forms. Once the investigation is done I would like to transfer to Clarke County Camp, Sumter County Camp or Jefferson County Camp to prevent any further violations of my natural, ... and civil rights."

On September 5, 2019, Plaintiff's grievance coordinator recommended denial of the request, and provided the following comments in support of their recommendation:

> Based on the statement from Warden Joseph, inmate has been advised of the GDC ¿Beard Policy¿. Inmate initially told staff that he grows a goatee because of his religion as well-advised Warden Joseph that his hair could not grow on the side of his face. This counselor recommend this grievance be denied. The inmate is responsible for informing staff of any special medical or religious needs. During his initial intake, he never advised anyone of any special religious need. The inmate has since been provided a Special Religious Request form

On September 6, 2019, Defendant made the following note regarding Plaintiff's request:

> Inmate Mays initially indicated that his facial hair did not grow on the sides of his face. He was told that he could grow a beard, but he had to keep it low and even. He was later observed growing a goatee, and the sides of his face were cleaned shaven. Per policy, offender cannot simply grow a goatee. The inmate has filed a "Special Religious Request". Institution is awaiting a response from the Regional Director.

Despite the reference to Plaintiff's request being reviewed by the Regional Director, the database states Defendant denied the request. Plaintiff subsequently appealed Defendant's

5

determination, and an investigator affirmed on October 9, 2019, explaining in support:

> Our inquiry revealed no evidence that inmate has been discriminated against and inmate offered no evidence to support that allegation. However, Standard Operating Procedure 228.02 notes that a goatee is not allowed. If an offender cannot grow a full beard, it does not mean that the beard must be removed. Where hair grows, the beard should be trimmed evenly, up to the ½ inch limit. This grievance is denied.

By affidavit, Defendant explains he has no authority to grant special religious requests according to the plain terms of the GDOC special request policy. The quote, as provided above, limits the warden's review of a special request to ensure consistency, continuity, and constitutional compliance. Only the "Director, Field Operations Designee, Director of Chaplaincy Services and General Counsel/Designee may meet as a panel to review the request and issue a decision." Defendant explains he did review Plaintiff's request and recommended denial because Plaintiff only claimed that his facial hair, in general, is important to his religious beliefs and "did not present any information showing that his religion required him to have a goatee only." Finally, Defendant attests he forwarded Plaintiff's request to the Regional Director and never received a response because Plaintiff was transferred out of RCCI on October 31, 2019. (Id.)

In his unsworn affidavit, Plaintiff alleged that, on June 25, 2019, he explained to Defendant he was of the Muslim religion and adhered to the practices of the Moorish American Islamic Temple. (Mays Aff., ¶ 3.) Plaintiff further alleged that he explained to Defendant he: (1) "took the Nazarite vow to not cut [his] hair whether on [his] head or face"; and (2) could not shave his facial hair because he suffers from pseudo folliculitis. (Id. at ¶ 4.) While Defendant seemed to respond favorably during this conversation, just weeks later on July 6th, unidentified officials punished Plaintiff for wearing a goatee by placing him in administrative segregation. (Id. ¶ 5.) Purportedly left with the choice of shaving or staying in administrative

segregation, Plaintiff shaved his goatee and "broke out real bad," such that sought medical assistance. (Id. ¶ 6.) Plaintiff has completed his term of imprisonment and is no longer incarcerated at RCCI or in GDOC custody. (Id. ¶ 10.) In support, Plaintiff attaches documents that are mostly duplicative of Defendant's exhibits and recounts the history of his punishments for wearing a goatee and the subsequent process of his related special religious request. (Pl.'s Exs. 1-7, doc. 60.)

### III.   DISCUSSION

Defendant advances five summary judgment arguments. First, Defendant claims Plaintiff cannot establish a causal connection, and therefore lacks standing, because Defendant "did not implement the grooming policy, had no authority to amend it, and had no authority to accommodate Plaintiff's request to deviate from the policy." (Doc. no. 62-2, p. 4.) Second, Defendant contends Plaintiff did not exhaust remedies because he never submitted a special religious request to grow his hair long. Third, Defendant contends Plaintiff failed to establish a prima facie claim under RLUIPA because he has presented no evidence or argument to establish a valid connection between his desire to grow a goatee and long hair and his Islamic Moorish American beliefs. Defendant's final two summary judgment arguments are that he is entitled to qualified immunity, and there is no evidentiary support for the punitive damages claim. As explained below, the Court rejects the first argument, agrees arguments two and three require complete summary judgment in Defendant's favor, and declines to address the final two arguments because it is unnecessary to do so.

### A.   Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The

mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. Cty. of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case [. . . ], no reasonable jury could find for the nonmoving party." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608.  The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by affidavits or as otherwise provided in Federal Rule Civil Procedure 56.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

Plaintiff's motion for summary judgment should be denied. For Plaintiff to prevail on his own motion at the summary judgment stage, he must show there is no "genuine dispute as to any material fact" to establish he is entitled to judgment as a matter of law. Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). Plaintiff must do more than provide adequate support for a claim, he must show "on all the essential elements of [his] case . . . , no reasonable jury could find for" Defendant. Four Parcels of Real Prop., 941 F.2d at 1438.

Thus, by definition, if Plaintiff is arguing only that he states a cause of action or is relying on the prospect of a jury trial to evaluate the merits of his case, he is not entitled to summary judgment. Plaintiff has failed to provide the adequate support for his claim. As explained below, Defendant is entitled to summary judgment, which means Plaintiff's summary judgment motion for the same claims should be denied.

A person may "assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution." 42 U.S.C. § 2000cc-2(a). To establish standing under article III, a plaintiff must show: 1) he suffered a concrete injury in fact; 2) a causal connection between the injury and the conduct complained of; and 3) that the injury can be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Here, there is no question as to who may actually approve the prisoner's special religious request. Both Plaintiff and Defendant provide the standard policy for the special religious request process which specifically lays out who approves the requests. (See doc. no. 62, Ex. B; doc. no 65, Attachs. 2, 8.); see e.g., Gholston v. Powell, 2019 WL 4305507 at *6, *7 (M.D.Ga. 2019) (holding the warden should not be dismissed from the case because

defendant's evidence contained conflicting information as to who must actually approve a prisoner's request for a religious accommodation). Further, Plaintiff provides documentation conceding the request was filed with the warden. (Mays Aff., Attach. 7; doc. no. 69, p. 2.)

Even if Plaintiff asserts the request was not sent to the appropriate individuals, he provides no evidence of such. However, Defendant provides documentation of Plaintiff's request, which shows Defendant recommended disapproval and sent the request to the facility operations director, director of chaplaincy, and general counsel in accordance with policy. (Joseph Aff., Attach. G.) Plaintiff was transferred out of RCCI before receiving a decision on his request. Thus, Plaintiff fails to show a causal connection that Defendant was responsible under RLUIPA for Plaintiff's alleged injury because it is not in Defendant's authority to approve or deny the special religious request.

> **B.** **Viewing the Evidence in the Light Most Favorable to Plaintiff, Reasonable Jurors Could Disagree Concerning Whether Defendant Had Authority To and Actually Did, Deny Plaintiff's Special Religious Request**

Defendant claims Plaintiff cannot establish a causal connection, and therefore lacks standing, because Defendant "did not implement the grooming policy, had no authority to amend it, and had no authority to accommodate Plaintiff's request to deviate from the policy." (Doc. no. 62-2, p. 4.) In support, Defendant attests he has no authority to grant special religious requests according to the plain terms of the religious accommodations policy. He is correct that the policy, quoted in full above, limits the warden's review of a special request to ensuring consistency, continuity, and constitutional compliance. Only the "Director, Field Operations Designee, Director of Chaplaincy Services and General Counsel/Designee may meet as a panel to review the request and issue a decision." The problem, however, is that RCCI's own records plainly state that Defendant denied the special religious request, which Plaintiff appealed, and

an investigator affirmed Defendant's denial. For this reason, reasonable jurors could disagree concerning whether Defendant had authority to, and actually did, deny Plaintiff's special religious request. Summary judgment concerning this issue is therefore improper.

### C. Plaintiff Failed to Exhaust Administrative Remedies with Regard to His Claim that Defendant Wrongfully Prohibited Him from Growing His Hair Long

#### 1. The Legal Framework for Determining Exhaustion

Although the failure to exhaust administrative remedies is an affirmative defense typically raised in a motion to dismiss, it may also be raised in a motion for summary judgment. See Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). When raised in a motion for summary judgment, the Court should treat the exhaustion issue as if it were raised in a motion to dismiss, and the analysis does not result in an adjudication on the merits. See id. The Eleventh Circuit has laid out a two-step process for motions to dismiss and summary judgment motions raising the exhaustion defense. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. See Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant, 530 F.3d at 1373-74).

If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside

the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

12

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). To properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### 2. Plaintiff's Failure to Submit a Special Religious Request

Plaintiff never asked Defendant for permission to grow his hair long. While his special religious request mentioned the importance of growing his hair long as a religious symbol of dignity and manhood, Plaintiff unambiguously limited the relief he sought to permission for growing a goatee. Thus, Plaintiff failed to exhaust his remedies with respect to that portion of his RLIUPA claim concerning his hair length.

The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules. Johnson, 418 F.3d at 1159. The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison

administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").

Because the record confirms Plaintiff did not exhaust his administrative remedies concerning his desire to grow his hair long, Defendant is entitled to summary judgment with respect to this aspect of the RLUIPA claim. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

### D. No Reasonable Juror Could Find that Plaintiff's Desired Accommodation of Growing a Goatee is Sincerely Based on a Religious Belief

Section 3 of RLUIPA provides in relevant part, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . ." 42 U.S.C. § 2000cc-1(a). A prima facie case under section 3 of RLUIPA requires Plaintiff to show (1) he engaged in a religious exercise; and (2) the religious exercise was substantially burdened. Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1228 (11th Cir.2004).

When analyzing whether a plaintiff is engaged in a sincerely held religious belief, the Supreme Court has cautioned that it is "not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretation of those creeds." Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). Thus, RLUIPA defines

14

"religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). "Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion . . . the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005). Therefore, to be protected, a plaintiff must show the accommodation he seeks is sincerely based on a religious belief. Id. (citations omitted).

Plaintiff provides no evidence, or even bare assertions, showing a goatee is central or even relevant to his Islamic Moorish American religious beliefs. Most convincing, Plaintiff cites nothing in the Quran or other religious texts. Nor does he bother to mention any rituals, rites, customs, or policies. In his special religious request, Plaintiff provides nothing other than his naked assertion that Islamic Moorish Americans "grow our hair long on our head and facial hair due to it mean dignity and manhood." Even now at this extremely late stage of litigation, Plaintiff offers nothing more than the most generalized contention, in his unsworn affidavit, that he "took the Nazarite vow to not cut [his] hair whether on [his] head or face." Were such naked *ispi dixit* assertions sufficient to establish a sincerely held religious belief, any inmate could easily justify whatever accommodation that would please him. More should be, and is, required to state a prima facie case.

Furthermore, and perhaps more importantly, no reasonable juror could find that the purported Nazarite practice of growing a long beard relates in any way to Plaintiff's desire to shape his beard into a goatee. Indeed, Plaintiff never asked for an accommodation to grow a long beard. Plaintiff instead asked for the ability to shape his short beard—allowed by the grooming policy—into a goatee. For these reasons, no reasonable juror could find, based on the scant record offered by Plaintiff, that his desire to grow a goatee was based on a sincerely held religious belief. Compare Sims v. Owens, No. 5:13-CV-00385 (CAR), 2016 WL 4253969, at *1 (M.D. Ga.

15

July 22, 2016), report and recommendation adopted, No. 5:13-CV-00385 (CAR), 2016 WL 4257043 (M.D. Ga. Aug. 10, 2016) (rejecting RLUIPA claim for growing goatee made by Rastafarian because he failed to show his personal religious beliefs, rather than personal preference, led him to grow goatee rather than full beard. ) with Benning v. Georgia, 864 F. Supp. 2d 1358, 1362 (M.D. Ga. 2012) (finding plaintiff's beliefs were sincere because he copiously cited Jewish law and customs to support belief of being forbidden to shave ear-locks).

### E. Plaintiff is Not Entitled to Summary Judgment for the Same Reasons

Because the undisputed facts show Defendant is entitled to summary judgment, the Court, therefore, denies Plaintiff's cross-motion for summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**, (doc. no. 62), Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 57), a final judgment be entered in favor of Defendant, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 22nd day of November, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA